UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICIA BORODIJ,

                          Plaintiff,

        -vs-                    **No. 6:17-CV-06236 (MAT)**
                                               **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                          Defendant.

## I. Introduction

Represented by counsel, plaintiff Patricia Borodij ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of defendant the Acting Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## II. Procedural History

Plaintiff protectively filed an application for SSI on July 24, 2014, alleging disability as of November 1, 2008 due to difficulty staying asleep, depression, bipolar disorder, anxiety, and difficulty with comprehension. Administrative Transcript

("T.") 22, 91, 186. Plaintiff's application was initially denied. T. 91-100. At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John P. Costello on September 6, 2016. T. 44-90, 116-118. On September 21, 2016, ALJ Costello issued an unfavorable decision. T. 19-38. The Appeals Council denied Plaintiff's request for review on February 16, 2017, rendering the ALJ's determination the final decision of the Commissioner. T. 1-6. This action followed.

**III. The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from July 24, 2014, her application date. T. 24. At step two, the ALJ found that Plaintiff suffered from the severe impairments of pes planovalgus (foot), depression, bipolar disorder, anxiety, impaired intellectual functioning, and drug or alcohol addiction, in remission and not material. *Id*. The ALJ further found that Plaintiff had the nonsevere impairment of left epicondylitis. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. *Id.* The ALJ

2

particularly considered Listings 12.04, 12.05, and 12.06 in reaching this determination. T. 24-26.

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following non-exertional limitations: is limited to simple, routine tasks; is limited to low stress work, defined as work involving only occasional decision making; and should have no more than occasional interaction with coworkers and the public. T. 26.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. T. 32. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including hand packager and furniture cleaner. T. 32-34. Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. T. 34.

## IV. Discussion

### A. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also*

*Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

Here, Plaintiff's sole argument is that the ALJ erred in finding at step three that Plaintiff's impairments did not meet the requirements of Listing 12.05(C). For the reasons discussed below, the Court finds this argument without merit.

**B. The ALJ's Determination that Plaintiff did not Meet the Requirements of Listing 12.05(C) is Supported by Substantial Evidence**

In order to be found disabled based on intellectual disability under Section 12.05 of the Listing of Impairments, a claimant "must prove: (1) that he satisfies the definition provided for in the introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A, B, C, or D." *Antonetti v.*

*Barnhart*, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005). The introductory paragraph of Section 12.05 states that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In order to meet the requirements of Listing 12.05(C), a claimant must meet the introductory paragraph's criteria and demonstrate (1) a "valid verbal performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). An individual who is found to meet these requirements is presumed to be disabled at step three of the sequential process without further inquiry. See 20 C.F.R. § 404.1520(a)(4)(iii). Thus, in order to meet 12.05(C)'s requirements, Plaintiff is required to show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested prior to the age of 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In this case, the AlJ expressly considered whether Plaintiff met the requirements of Listing 12.05C. The ALJ found that Plaintiff did not have deficits in adaptive functioning, as

5

required by the introductory paragraph. T. 26. The ALJ elaborated that the evidence of record showed that Plaintiff was able to engage in adaptive activities such as cleaning, shopping, taking public transportation, paying bills, caring appropriately for her grooming and hygiene, using telephones, and using a post office. *Id*. Moreover, the ALJ noted that Plaintiff had "in fact engaged in competitive past relevant work for many years." *Id*. The ALJ additionally found that Plaintiff did not meet the criteria of Listing 12.05(C) because she did not have "a valid verbal, performance, or full scale IQ of 60 through 70," or "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Plaintiff argues that the evidence of record demonstrates that she meets the requirements of Listing 12.05(C) and that the ALJ's conclusion to the contrary was erroneous. In particular, Plaintiff argues that (1) the evidence of record shows that she has deficits in adaptive functioning, including an inability to use public transportation, difficulty paying bills, and difficulty maintaining hygiene and grooming, (2) the evidence of record shows that in November 1986, when she was 16 years old, Plaintiff underwent testing that showed she had a verbal IQ score of 69 and a full scale IQ score of 71, and (3) that the severe impairments identified by the ALJ in his decision satisfy the final criteria of Listing 12.05(C).

In defense of her final determination, the Commissioner "does not dispute Plaintiff's contention that she had an additional physical or other mental impairment imposing an additional and significant work-related limitation." Docket No. 15-1 at 15. The Commissioner further "acknowledges the 1986 scores suggesting that Plaintiff had a verbal, performance, or full scale I.Q. score of 60 through 70." *Id*. However, the Commissioner contends that the AlJ's ultimate conclusion that Plaintiff did not meet the requirements of Listing 12.05(C) was correct, because the ALJ properly found that "Plaintiff did not have the necessary deficits in adaptive functioning prior to age 22." *Id*. at 16.

The Court agrees with the Commissioner that the medical evidence of record supports the ALJ's conclusion that Plaintiff did not have deficits of adaptive functioning as required by the introductory paragraph of listing 12.05. "Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (internal quotation omitted). "[T]here is no necessary connection between an applicant's IQ scores and her relative adaptive functioning," and "persons with an IQ in the 60s (or even lower) may still be able to hold a full-time job, and are therefore not disabled, if their adaptive functioning is sufficiently intact." *Id*. (internal quotation omitted). Evidence that an individual is capable of "living on one's own, taking care of children without help sufficiently well that they have not been adjudged neglected, paying bills, and avoiding eviction" supports

7

the conclusion that she does not have deficits in adaptive functioning. *Burnette v. Colvin*, 564 F. App'x 605, 607 (2d Cir. 2014) (internal quotations omitted).

In this case, the record amply support the ALJ's conclusion that Plaintiff lacked the requisite deficits in adaptive functioning to satisfy the criteria of Listing 12.05(C). Plaintiff's education records from high school indicate that she was pleasant and easy to get along with, with no discipline problems. T. 276. Plaintiff was able to complete high school with a regular diploma. T. 61. She lives with and cares for her son and her pets, and has a driver's license. T. 71, 222, 322. Plaintiff testified that she was able to socialize with friends and to attend family events. T. 74. Plaintiff further testified that she is able to maintain a calendar to keep track of her appointments and to track her medications. *Id*. She is able to grocery shop, thought she did testify that she has trouble with math and therefore would often exceed the amount she receives in food stamps and have to pay the balance in cash. T. 69-70. Plaintiff reported that she was able to perform all household chores, including cleaning, laundry, household repairs, ironing, and yardwork. T. 218. Plaintiff is also able to attend Alcoholics Anonymous meetings on a daily basis (T. 68).

The report of consultative psychiatric examiner Dr. Yu-Ying Lin further supports the ALJ's conclusions regarding Plaintiff's adaptive functioning. Plaintiff reported to Dr. Lin that she was able to dress, bathe, and groom herself, that she could drive and

8

take public transportation, that she could manage her own money (with occasional assistance from her mother), and that she could cook, clean, do laundry, and shop. T. 327. Dr. Lin concluded that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. T. 328. Similarly, consultative examiner Dr. Adam Brownfeld found that Plaintiff had normal functioning and would not require any accommodations in order to be able to work. T. 362-63. State agency psychiatric reviewer Dr. S. Jurgia also opined that Plaintiff had no restrictions in her activities of daily living.

As the ALJ also noted, Plaintiff was able to work for multiple years as a health care aide for the elderly. T. 57-58. The VE testified that this was semi-skilled work. T. 63. In order to work as a health care aide, Plaintiff was required to pass a certification test. T. 60-61. Moreover, Plaintiff testified that she had been let go from her last job due to getting into an argument with a co-worker and that it was her depression (not her intellectual functioning) that had caused her to have conflict with her co-workers and supervisors. T. 64-65. The ALJ did not err in concluding that Plaintiff's history of competitive, semi-skilled employment demonstrated a high level of adaptive functioning. *See Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *5, 10 (N.D.N.Y. Apr. 26, 2011).

Plaintiff contends that the record supports the conclusion that she was unable to use public transportation, pointing to two instances in which licensed mental health counselor Kathleen

9

Crowley opined to that effect. T. 367, 379. However, on two other occasions, Ms. Crowley opined that Plaintiff could use public transportation. T. 371, 559. Moreover, Dr. Brownfeld opined that Plaintiff had normal functioning in her ability to take public transportation, as did licensed clinical social worker Carol Tichener and Dr. Sheetal Gandotra. T. 332, 357, 362. Plaintiff also told Dr. Lin that she was able to use public transportation. T. 327. Where the evidence of record conflicts, it is the role of the ALJ and not this Court to resolve that conflict. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Here, the ALJ reasonably found that Plaintiff was able to take public transportation.

Plaintiff's contention that the ALJ was required to find that she is unable to maintain her personal hygiene and grooming is similarly flawed. While Ms. Crowley did opine on one occasion that Plaintiff was moderately limited in her ability to maintain basic standards of hygiene and grooming (*see* T. 559), the record is replete with evidence that Plaintiff was appropriately groomed and capable of maintaining her personal hygiene. *See, e.g.,* T. 316, 321, 326, 362. Indeed, Ms. Crowley herself opined that Plaintiff had the capacity to maintain basic standards of hygiene and grooming on multiple occasions. *See* T. 367, 371, 379. Moreover, Plaintiff reported that she had no problems in bathing, dressing, or caring for her hair. T. 222. Again, the Court finds no error in the ALJ's resolution of this conflicting evidence.

Plaintiff also argues that her financial troubles (namely, that she was behind on her mortgage and her electric bill) are evidence of deficits in adaptive functioning. However, Plaintiff's testimony made it clear that she was behind on her bills not due to her intellectual impairments, but because she had lost her job and did not "make enough money to pay all [her] bills." T. 72. Plaintiff testified that she paid her bills on the first of every month when she had the funds (T. 71), which indicates that she understands how bills work and is capable of paying them. Indeed, the fact that Plaintiff was able to obtain a mortgage and successfully pay it prior to losing her job is evidence of good adaptive functioning. Plaintiff's financial difficulties are not evidence of deficits in adaptive functioning, but are instead a function of her having been unemployed for a number of years.

Having determined that the ALJ properly found that Plaintiff "does not demonstrate limitations in adaptive functioning," the Court "need not determine whether substantial evidence supports the ALJ's determination" regarding the other criteria for Listing 12.05(C). *Lawler v. Astrue*, 512 F. App'x 108, 110 (2d Cir. 2013). The conclusion that Plaintiff does not have the requisite deficits in adaptive functioning is outcome determinative, and therefore "this determination and its corresponding support in the record renders remand futile" even if the ALJ erred in his consideration of the other Listing 12.05(C) criteria. *Id*. at 111. Accordingly, the Court finds that the Commissioner's final determination must he upheld and that remand of this matter is not warranted.

### V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is denied.  The Commissioner's motion for judgment on the pleadings (Docket No. 15) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                            **S/Michael A. Telesca**
                                            HON. MICHAEL A. TELESCA
                                            United States District Judge

Dated:    May 2, 2018
            Rochester, New York.